## CIRCUIT COURT OF ORANGE COUNTY

H & B Associates, etc.

v.

Warren O. Colvin
and Betty M. Colvin

February 17, 1994

Case No. CL93000053

BY JUDGE LLOYD C. SULLENBERGER

H & B Associates, a general partnership, has brought an action against Warren O. and Betty M. Colvin to establish a boundary line under Virginia Code § 8.01-179. H & B alleges it acquired 19 acres, more or less, of land by a 1992 deed from E. William Hess and wife; that by subsequent survey of Stearns L. Coleman, the tract was shown to contain 19.2616 acres and to be bounded as shown on a plat of that survey dated May 28, 1993 (the Coleman plat); that a dispute exists as to the location of the western boundary of H & B's property as it adjoins the property of the Colvins.

The Colvins have filed a plea in bar of the statute of limitations by adverse possession, Code § 8.01-236, alleging that they own land east of the boundary line shown on the Coleman plat to a dashed line shown on the Coleman plat which is based on a line shown on a plat of survey by M. T. Estes dated November 30, 1978 (the Estes plat), recorded in the clerk's office of this court.

An *ore tenus* hearing was held on the plea in bar, after which the court requested memoranda from counsel. These have been received and considered.

For purpose of the hearing on the plea of the statute of limitations, the Colvins have stipulated that H & B has title by deed to the disputed area.

The disputed area contains about five acres. According to the Coleman plat—including an area within a lot shown to be owned by Roy T. Lamb

and wife, not at issue in this proceeding—the disputed area is generally triangular in shape (although the northern boundary line has one slight angle). The line forming the eastern boundary of the Colvin property and the western boundary of the H & B property as claimed by H & B will be referred to as the "Coleman line." The like boundary as claimed by the Colvins will be referred to as the "Estes line."

According to the testimony of Coleman, the land of H & B, including the disputed area, and the land of the Colvins adjacent to the disputed area was all part of a tract containing 53.89 acres acquired by John Albert Cary from F. Cornelia Christian in 1892.

John Albert Cary conveyed 30.25 acres, more or less, to Albert Daniel Cary (H & B's predecessor in title) by deed dated September 4, 1906, recorded in Deed Book 64, page 408. This deed contains a metes and bounds description which omits one distance. Coleman testified that the deed from Christian to Cary also contained a metes and bounds description, and from it, the missing distance could be determined.

The deed from John Albert Cary to Albert Daniel Cary described the tract conveyed as lying on the turnpike from Barboursville to Gordonsville (now U.S. Route 33) and beginning at a planted rock, a corner with grantor Cary in John Brock's line, thence S 17½ E 21.15 chains (1395.9 feet) to a point in the center of the turnpike, a corner with grantor Cary. This line was the division line between the land conveyed by John Albert Cary to his son, Albert Daniel Cary, and the land—from the Christian acquisition--retained by grantor Cary. The boundary was then described as running along the center of the turnpike S 85 E 6.79 chains (448.14 feet) and S 70 3/4 E—here is missing the distance which Coleman found from the prior description, this being an existing line—to a point in the center of the old road. The boundary then ran along the center of the old road three courses and distances. It then ran a course and distance with the line of George Cary to a planted rock at a corner with Jack Brock's estate, and finally, a course and distance to the point of beginning.

In 1943 John Albert Cary's executors conveyed to Larry and Eva Riner the land owned by John Albert Cary when he died in 1932, which included what the decedent still held from the 1892 Christian acquisition. The Riners later conveyed out two lots of one and one-half acres each according to the Estes survey of 1978. The eastern line of Lot 1 was along a fence which ran from Route 33 to the set stone found at a fence corner, Lot 1's eastern line being 323.93 feet, of the total distance of 1407.62 feet from

Route 33 to the set stone. Estes's plat described the fence line as a "use. line."

In 1985 widow Eva Riner conveyed her remaining land to the Colvins, except she reserved for herself 2.978 acres west of and adjacent to Lot 2 as had been shown on the Estes plat. Coleman surveyed and platted the lot she reserved.

The evidence shows that along the Estes line is located a barbed wire fence variously affixed to trees and fence posts. A small cemetery in which John Albert Cary and his wife and a son are buried lies adjacent to and west of the fence along the Estes line, several hundred feet from the northern terminus of the Estes line. Two fences begin at the Estes line and run west through the Colvins' land, the more southern one having been built by Warren Colvin for his agricultural purposes.

Estes testified that in 1978 when he surveyed for the two lots, he found a planted stone at the northern end of the barbed wire fence. Coleman testified that the stone was not there in 1993. Others recalled the stone in earlier times.

Estes also identified aerial photographs from 1950 and 1966 Soil Conservation Service records as showing a boundary between (now) the Colvins and H & B at the location of the Estes line fence.

Defendant Warren Colvin, whose wife is a niece of former owner Larry Riner, has known and worked on the property now owned by the Colvins since 1954, when he married his wife. They live about one and one-half miles from the property; he is retired from former employment and now farms. When he purchased the land from Eva Riner, he thought the fence on the Estes line was the eastern boundary. Since Warren Colvin has known the property, Larry Riner had not worked the land east of the Estes line, nor had any predecessor of H & B worked the land west of the Estes line. Shortly after the Colvins' purchase, Hess, then owner of the H & B land, offered to help fix the fence along the Estes line if Warren Colvin wanted to do so.

Warren Colvin testified that he did not have a boundary survey done when he purchased the land from Eva Riner because he was familiar with boundaries; that he intended to acquire the land within the boundaries as he knew them, including all land west of the Estes line fence.

The Colvins called Eva Riner, age 86, as a witness. She testified that she and her husband bought the land in 1943, on which to farm and to build a residence. The Riners raised cattle and grew hay, corn, and grains on the land. She recalled helping fix the fence along the Estes line. She said large

parts of their land were cultivated. According to her, the Riners did not farm east of the Estes line, nor did the owners of the land east of the line farm to the west of the line.

On cross-examination, she answered in the affirmative that she intended to acquire only such land as was deeded to her and her husband; that she claimed no other land.

James W. Gibson, who had helped farm the land and who had lived across Route 33 from the land for 30 years; Odie Shiflett, whose family had owned the H & B tract and who had lived on the property until 1946; and Earl W. Bailey, age 72, who remembered the land since the 1930s, testified.

All knew the Estes line (the barbed wire fence) as the boundary line between the two tracts, Bailey since the 1930s when the Carys still owned both parcels. Bailey had worked both for the Riners and for Hess, helping farm the respective tracts. He recalled farm use by Albert Cary.

Shiflett recalled helping maintain the Estes line fence because his family's vegetable garden was near the fence, and the Riners had cattle on their side.

The Colvins presented a *de bene esse* deposition of William Hess, H & B's predecessor in title. He had known the property since 1957. He and Larry Riner cooperated in maintaining the Estes line fence which Hess understood when he bought the land to be on the western line of his property. Hess acquired a tract said to contain 25.42 acres without survey and conveyed 6.29 acres by survey to Rogers on the east side of his tract prior to selling to H & B. He said he intended to convey to H & B all that he had acquired from Beaty, his grantor, less what he had conveyed to Rogers.

The court concludes that the evidence establishes, clearly and convincingly, that at least since the 1930s, the fence along the Estes line running from a former set stone to the point at (now) Route 33 has been treated by the owners of the land to the east and to the west of the fence as the boundary line between the two parcels.

At least from 1943 until 1985, when Larry Riner died, the Colvin land — to the Estes line fence — was farmed. On the land, cattle were pastured, corn was grown for ensilage, hay and grain were grown. Warren Colvin has continued to farm the land to the Estes line fence, at least by grazing cattle and cutting hay.

The Supreme Court has recently restated what is required to establish title to real property by adverse possession. See *Grappo v. Blanks*, 241 Va. 58, 400 S.E.2d 168 (1991).

A claimant must prove actual, hostile, exclusive, visible, and continuous possession, under claim of right, for the statutory period of 15 years. A claimant has the burden of proving all the elements by clear and convincing evidence. *Id*. at 61, 62.

Use and occupancy of the property constitute proof of *actual* possession. *Id*. at 62. The Riners lived on the land acquired from the Cary estate and actively farmed the land, including the disputed area, also repairing the line fence in question. The Colvins have continued to farm the disputed area by grazing cattle and cutting hay. The Colvins are entitled to benefit from the possession by the Riners and to tack to the extent necessary.

One's possession is *exclusive* when it is not in common with others. *Id*. The disputed area has been used exclusively by either the Riners or the Colvins since 1943.

Possession is *visible* when it is so obvious that the true owners may be presumed to know about it. *Id*. Since 1943 the disputed area has been farmed and the line fence maintained. The court infers that during much of the time, the H & B property has been occupied either by the owner or his tenant and farmed.

Possession is *continuous* only if it exists without interruption for the statutory period. *Id*. Without considering the period before 1943, since that year until 1985, the Riners farmed the disputed area with the rest of their property. The Colvins have continued farming it.

One is in *hostile* possession if his possession is under claim of right and adverse to the owner. In the context of adverse possession, the terms *claim of right, claim of title* and *claim of ownership* are synonymous. They mean a possessor's intention to appropriate and use the land as his own to the exclusion of all others. That intention need not be expressed but may be implied by a claimant's conduct. Actual occupation, use, and improvement of the property by the claimant, as if he were the owner, is conduct that can prove claim of right. *Id*.

H & B says that the Colvins and their predecessors in title and H & B and its predecessors in title have been mistaken until the Coleman survey as to the actual location of the boundary between the tracts. Therefore, according to H & B, the Colvins have not shown an intention by them and

their predecessors to possess the disputed area adversely to the true owners. H & B points to Eva Riner's testimony.

The court has reviewed the various cases cited by both sides and some other Virginia cases.

The court finds that the evidence clearly and convincingly establishes that the Colvins and the Riners before them intended to claim the disputed area; that they believed the Estes line fence to be their eastern boundary and for good reason. Accordingly, by the occupation of the disputed area as part of their farming operation, their use of the same and their improvement through cultivation, hay cutting, and maintaining the fences, their conduct outweighs the testimony of the widow Riner at age 86, now only owning her lot, which is not a part of the disputed area. Her actions for over forty years, and other of her testimony, cause the court to give little probative value to that part of her testimony pointed to by H & B in deciding this issue.

At least since 1943, the owners of the Colvins' land have done nothing inconsistent with claiming ownership of the disputed area, while putting H & B and its predecessors in title on notice upon minimal observation that they (the owners of the Colvin land) considered the land extending to the Estes line fence to be theirs.

The plea in bar of statute of limitations will be sustained.